DECISION AND JUDGMENT ENTRY
This is an appeal from a judgment of conviction and sentence entered by the Lucas County Court of Common Pleas after defendant-appellant, Milton Roberts, Jr., pled no contest to one count each of possession of crack cocaine and tampering with evidence. Roberts has not raised an assignment of error from that judgment but has raised an "issue" which he is asking this court to address:
 "Whether the trial court erred in ruling that Appellant Milton Robert [sic], Jr.'s Motion to Suppress not [sic] well-taken by applying the law of Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1869, 20 L.Ed.2d 889 (1968) instead of the standard of Mapp v. Ohio, 367 U.S. 642, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961)."
On October 20, 1999, appellant was arrested and charged with the offenses stated above. The facts surrounding his arrest were testified to at the hearing on the motion to suppress and are as follows.
In October 1999, Detective Jennifer Bechtel of the Toledo Police Department was the lead investigator in the investigation of appellant for drug trafficking. Bechtel learned of appellant's activities through a confidential informant ("CI") who had given reliable information in the past. The CI told Bechtel that a black male named Milton Roberts lived in the upper unit of 946 Islington Street and that he was selling crack cocaine from that location. The CI also told Bechtel that Roberts would keep the crack cocaine in his buttocks area and that Roberts carried a gun. Based on this information, Bechtel conducted surveillance of 946 1/2 Islington Street for several days. During this surveillance, Bechtel witnessed heavy foot and car traffic at the residence. Bechtel testified that people would enter the residence and exit within a matter of minutes and that this type of traffic was indicative of drug activity.
Bechtel further stated that she used the CI to complete a controlled buy of crack cocaine from appellant at that residence. She also testified that during her surveillance she saw appellant driving a blue Chevy Cavalier.
Based on the information she learned from the CI and from her own surveillance, Bechtel obtained a warrant to search the residence at 946 1/2 Islington Street and occupied by Milton Roberts. The warrant approved the search of the property and seizure of any controlled substances, namely cocaine, and any tools, instruments, equipment, paraphernalia or weapons used to manufacture, store, process, protect or sell drugs of abuse. On October 20, 1999 at 2:00 p.m., Detective Bechtel and officers of the Toledo Police Department executed the search warrant on 946 1/2 Islington Street. Appellant was not home at the time, but his girlfriend was. Upon conducting the search, officers retrieved a scale containing cocaine residue, a small amount of marijuana, plastic baggies with torn off corners containing cocaine residue, and handgun bullets. Appellant's girlfriend implicated him in drug trafficking and stated that appellant would soon be home. The officers therefore left the residence and parked up the street to await appellant's return.
Approximately ten minutes later, appellant returned to the residence driving the blue Chevy Cavalier which Bechtel had seen him drive previously. Before the officers could approach him, appellant and a companion went into the residence. Several minutes later appellant and his companion exited the residence and returned to appellant's car. Believing that appellant would have the drugs on his person, Detective Bechtel and Sergeant Robert Marzec approached him and his companion and removed them from the car. Sergeant Marzec then patted down appellant in a search for weapons. Marzec testified that because the search of the residence uncovered bullets and because guns are generally associated with drug trafficking, he suspected that appellant may be armed. During the pat down, Marzec ran his hand sideways between appellant's buttocks and felt a large, irregular object. Given his experience in investigating drug activity, Marzec believed the object to be crack cocaine. After feeling the object, Marzec pulled back the elastic waistband of appellant's sweatpants and saw a plastic baggie protruding from between appellant's buttocks. With that, appellant straightened up, preventing Marzec from removing the baggie. Marzec then placed appellant under arrest and charged him with obstructing official business. Appellant was then placed in the back seat of a police cruiser and transported to the police station.
Once appellant was inside the police station he was searched, but the baggie was not found on him. Officers then searched the back seat of the police cruiser in which appellant had been riding and found a baggie containing crack cocaine. The outside of the baggie was soiled with human waste.
Appellant was subsequently indicted and charged with possession of crack cocaine in violation of R.C. 2925.11(A) and (C)(4)(c) and tampering with evidence in violation of R.C. 2921.12(A)(1). Thereafter, appellant filed a motion to suppress the evidence obtained through an allegedly unlawful search of his person. The case proceeded to a hearing on the motion to suppress at which Detective Bechtel and Sergeant Marzec testified to the facts as set forth above. At the conclusion of the hearing, the court denied the motion and entered findings of fact and conclusions of law. In particular, the court held that based upon the information learned from the CI, upon the results of the search warrant and upon statements made by appellant's girlfriend during the execution of the warrant, the officers had a reasonable suspicion that appellant was engaged in criminal activity and therefore were authorized to stop appellant to question him about said activity. Additionally, the court found that once the officers had the right to stop appellant, they had a right to search him for weapons based on the information learned from the CI and on the fact that they found bullets when executing the search warrant. Finally, the court held that because the incriminating nature of the cocaine was immediately apparent to Sergeant Marzec upon his frisk of appellant, the officer was authorized to seize it, albeit at a later time. Accordingly, the court denied appellant's motion to suppress.
Subsequently, appellant changed his plea from not guilty to no contest and was thereafter found guilty of the charges and sentenced accordingly. It is from that judgment that appellant now appeals.
In his sole assignment of error, appellant challenges the trial court's ruling on his motion to suppress. Appellant asserts that the trial court's ruling was in error in that the search of appellant did not fall under any of the established exceptions to the warrant requirement. In particular, appellant asserts that the search of his person was beyond the scope of the search warrant and that at the time the officers frisked appellant, he was not involved in any criminal activity which would give the officers the right to search him. As such, appellant contends, the evidence should have been suppressed pursuant to Mapp v. Ohio (1961),367 U.S. 643.
Appellate review of the denial of a motion to suppress presents a mixed question of law and fact. In a motion to suppress, the trial court assumes the role of trier of fact and, as such, is in the best position to resolve questions of fact and evaluate witness credibility. State v.Smith (1997), 80 Ohio St.3d 89, 105. Accordingly, this court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. State v. Rhude (1993), 91 Ohio App.3d 623,626; State v. Guysinger (1993), 86 Ohio App.3d 592, 594. Accepting those facts as true, this court must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard. State v. Klein (1991), 73 Ohio App.3d 486,488.
The Fourth Amendment to the United States Constitution protects citizens from unreasonable government intrusion, whether a search or a seizure. Searches and seizures conducted outside of the judicial process, without a warrant, are per se unreasonable, subject to several specific established exceptions. Schneckloth v. Bustamonte (1973),412 U.S. 218, 219. One of the specific exceptions to the requirements of a warrant and probable cause is a stop and frisk or pat-down search authorized by Terry v. Ohio (1968), 392 U.S. 1, and its progeny. UnderTerry, a police officer may stop a person without probable cause for arrest if he has a "* * * reasonable, articulable suspicion that the person has been, is, or is about to be engaged in criminal activity."United States v. Place (1983), 462 U.S. 696, 702. Under such a situation, the officer may conduct a protective frisk of the individual if he reasonably believes that the individual may be armed and presently dangerous. Terry, supra at 24. More specifically:
 "The sole justification of the search * * * is the protection of the police officer and others nearby, and it must therefore be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer." Id. at 29.
Detective Bechtel and Sergeant Marzec both testified that the search of appellant's apartment uncovered bullets to a handgun and drug paraphernalia consistent with drug trafficking. In addition, Sergeant Marzec testified that guns are often associated with drug trafficking. Finally, the CI had told Detective Bechtel that appellant carried a gun. Given that the officers found evidence of drug trafficking at appellant's home, they had the right to stop him for questioning regarding that activity. Moreover, given that bullets but no gun were found at the residence, the officers could reasonably assume that appellant was armed and, therefore, the officers had the right to frisk him.[1]
Accordingly, the trial court did not err in denying appellant's motion to suppress and the sole assignment of error is not well-taken.
On consideration whereof, the court finds that appellant was not prejudiced or prevented from having a fair trial and the judgment of the Lucas County Court of Common Pleas is affirmed. Court costs of this appeal are assessed to appellant.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
 ____________________________ James R. Sherck, J.
JUDGE
Mark L. Pietrykowski, P.J., George M. Glasser, J., CONCUR.
Judge George M. Glasser, retired, sitting by assignment of the Chief Justice of the Supreme Court of Ohio.
[1] Because appellant has not challenged the search beyond the initial stop and frisk we need not address the applicability of Minnesota v.Dickerson (1993), 508 U.S. 366, and the "plain feel" doctrine to this case.